UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 6:17-CR-40-CHB-HAI-6 |
| ) | |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| ABDUL M. WILKERSON, ) | |
| ) | |
| Defendant, ) | |

*** *** *** ***

On referral from District Judge Boom (D.E. 842), the Court considers reported violations of supervised release conditions by Defendant Abdul M. Wilkerson.

District Judge Boom entered Judgment against Defendant on March 27, 2019, on Defendant's plea to one count of conspiracy to distribute five grams or more of a substance containing methamphetamine. D.E. 431 (plea agreement); D.E. 530 (Judgment). Defendant was sentenced to sixty-six months of imprisonment followed by a four-year term of supervised release. D.E. 530.

Defendant was released to begin his period of supervised release on February 15, 2022. On June 28, 2022, Defendant stipulated to a number of violations of his conditions of supervised release, including controlled substance use, failure to follow the instructions of his probation officer, and failure to participate in substance abuse treatment. D.E. 766. Defendant's supervised release was revoked, and he was sentenced to a term of imprisonment of twelve months and one day followed by four years of supervised release. D.E. 768.

On May 23, 2023, Judge Boom approved that no action be taken following a report from the United States Probation Office ("USPO") that Defendant used methamphetamine. D.E. 779.

1

On October 4, 2023, Defendant's supervised release was again revoked after Defendant stipulated to three violations related to possession and use of controlled substances, as well as failure to report to substance abuse treatment. D.E. 790; *see also* D.E. 787. Defendant was sentenced to fourteen months of imprisonment to be followed by a one-year term of supervised release. D.E. 790 at 2-3.

On April 8, 2025, Judge Boom again approved that no action be taken following a report from the USPO that Defendant admitted to using marijuana. D.E. 839.

## I.

On April 25, 2025, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges Defendant with two violations. Both stem from a positive drug test result from a urine sample taken on April 10, 2025. Violation #1 alleges that Defendant committed a federal crime, possession of methamphetamine under 21 U.S.C. § 844(a), in violation of Mandatory Condition #1 of Defendant's conditions of release. This is a Grade B violation. Violation #2, premised on the same factual basis, alleges Defendant violated Mandatory Condition #3, which prohibits Defendant from engaging in any unlawful use of a controlled substance. This is a Grade C violation.

The Court conducted an initial appearance pursuant to Federal Rule of Criminal Procedure 32.1 on May 5, 2025. D.E. 843. During the hearing, Defendant made a knowing, voluntary, and intelligent waiver of his right to a preliminary hearing. *Id*. At that time, the United States made an oral motion for detention; Defendant did not argue for release. *Id*. Based on the heavy defense burden under 18 U.S.C. § 3143(a), the Court found detention was required. *Id*.

At the final hearing on June 9, 2025, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 857. Defendant waived a formal hearing and stipulated to the

violations set forth in the Report. *Id*. The Court found Defendant to be competent to stipulate to the violations and that the stipulation was knowingly, voluntarily, and intelligently made. *Id*. The Court also found the stipulation to be consistent with the advice of Defendant's counsel. *Id*.

The Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); *see also United States v. Cofield*, 233 F.3d 405, 406 (6th Cir. 2000) ("In order to revoke supervised release, the sentencing court must find by a preponderance of the evidence that a defendant has violated a condition of his supervised release."). Defendant's stipulation permits the Court to find that he engaged in conduct that is a Grade B violation under the Guidelines. *See* U.S. Sent'g Guidelines Manal § 7B1.1(a)(3) (U.S. Sent'g Comm'n 2023).

## II.

Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant was originally convicted of the Class B felony conspiracy to distribute five or more grams of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 846. *See* 21 U.S.C. § 841(b)(1)(B)(viii); 18 U.S.C § 3559(a)(2). His conviction carries a 36-month maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on Defendant's criminal history (at the time of sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (internal citation

3

omitted). The Guidelines also instruct that, "[w]here there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." U.S. Sent'g Guidelines Manual § 7B1.1(b) (U.S. Sent'g Comm'n 2023).

Under U.S.S.G. § 7B1.1(a), Defendant's admitted conduct qualifies as a Grade B violation with respect to Violation # 1 and a Grade C violation with respect to Violation # 2. Given Defendant's criminal history of III (the category at the time of his conviction in this District) and Grade B violation, Defendant's range, under the Revocation Table of Chapter 7, is eight to fourteen months. Consistent with the guidance of appellate courts, this Court takes the Guidelines-recommended sentence as its starting point and has remained cognizant of it in forming its recommended revocation sentence. *E.g., Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016).

### III.

At the final hearing, the government argued for revocation with an above-Guidelines sentence of twenty-one months of imprisonment. The defense requested Defendant be sentenced to eight months of imprisonment. Both parties recommended the Court not impose any further term of supervised release.

In support of its recommended sentence, the government argued these violations are part of a pattern of Defendant's continued breach of the Court's trust. It emphasized the frequency of Defendant's violations in both state and federal court, noting that beyond the two prior revocations in this case, Defendant has received several state convictions (including one for trafficking in controlled substances), two reported state probation violations, and four state court failures to appear. The government further argued that Defendant was sentenced to fourteen months

4

imprisonment, the top of his guideline range, for his last revocation, but still violated his conditions of release. Highlighting that the Court has spent over $11,000 on unsuccessful treatment opportunities for Defendant, the government contended an additional term of supervised release would be ineffective and a costly use of resources.

In requesting an eight-month sentence of imprisonment, defense counsel pointed to the extreme trauma Defendant had faced throughout his life. Defense counsel described the recent and traumatic death of Defendant's brother, which has significantly hindered Defendant's mental health as he continues to struggle through his grief. Defense counsel agreed that prior periods of imprisonment and supervised release have not been effective. However, she believes that Defendant is at a new point in his life and is more capable of abiding by the law after serving any term of imprisonment for these violations. Defense counsel explained that Defendant has gotten married since his last revocation. His wife is a well-educated mental health professional. She further explained that Defendant is involved in the life of his seven children, one of whom is currently pregnant. Counsel noted that Defendant has sought out mental health treatment on his own and now as better access to healthcare with his spouse's insurance.

Defendant also addressed the Court. He explained that he tried harder to comply with his conditions of release during this period of supervised release than he ever had in the past. He noted he was employed for the duration of his release and was working hard to care for his children.

Defendant also informed the Court that he admitted to the meth use prior to the positive test that gave rise to the Report. To clarify the sequence of events, the Court heard from U.S. Probation Officer Travis O'Bryan. Officer O'Bryan, participating telephonically, testified that Defendant was forthcoming with his admission of drug use prior to the drug test. Officer O'Bryan explained that he assisted in Defendant's case by conducting the April 10, 2025, drug test. Prior

to collecting the urine sample, Officer O'Bryan stated, Defendant admitted he would be positive for methamphetamine and marijuana use. As explained in the Report, Defendant was positive for methamphetamine

### IV.

The Court has reviewed the entire record, including the Report and its accompanying documents, and Defendant's underlying judgment and sentencing materials. The Court has also considered all of the 18 U.S.C. § 3553(a) factors imported into the § 3583(e) analysis. Through that consideration, the Court recommends that Defendant's supervision be revoked and that he be sentenced to a twelve-month term of imprisonment with no further supervised release.

Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted treatment in lieu of revocation under 18 U.S.C. § 3583(d). *Crace*, 207 F.3d at 835. Nothing in the record supports application of this exception, and neither party relied upon it.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S. Sent'g Guidelines Manual § 7B1.3(a)(2) (U.S. Sent'g Comm'n 2023) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

In analyzing the 18 U.S.C. § 3553(a) factors, the Court first considers the nature and circumstances of the underlying offense. *See United States v. Johnson*, 640 F.3d 195, 203 (6th

Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). This factor remains unchanged from Defendant's previous revocations. D.E. 787 at 6.

The Court next considers Defendant's history and characteristics. Defendant has experienced significant trauma which has undoubtedly continued to impact his life. The Court has taken this into account throughout Defendant's case. Since his last appearance before the Court, Defendant has further struggled with the recent traumatic passing of his brother. Acknowledging the horrible things that have happened to Defendant, the undersigned implores Defendant to recognize that his traumatic past does not dictate his choices; his mind and choices do.

The Court also considers the need to deter criminal conduct and protect the public. Defendant has a lengthy criminal history, both in this case and in state court. His initial sentence of imprisonment, two revocations, and continued supervised release have not been able to deter his criminal conduct. While there may be no evidence of overt violence in the instant violations, Defendant's use of methamphetamines perpetuates the drug trade, endangering those close to him and the public at large. Continued meth use will not only harm Defendant but will directly affect the safety of those around him. The difficulty the Court has faced with deterring Defendant's criminal conduct, along with the threat he poses to the safety, justify a twelve-month term of imprisonment.

Another factor focuses on opportunities for education and treatment. The record at this juncture does not show that any education, training, or treatment could effectively assist Defendant. Defendant has received significantly more resources and opportunities than others in his position. This investment has proven unsuccessful. The Court has no further tools for treatment to give Defendant.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Defendant's history with the Court makes the breach of trust factor particularly serious in this case. The Court has invested much more in Defendant than typical for individuals in his position. Despite the additional opportunities and resources, Defendant continues to violate the Court's trust. Notably, Defendant has shown some improvement since his last revocation. Unlike with his prior violations, Defendant admitted to his meth use before taking the drug test that gave rise to these proceedings. Defendant has informed the Court of the effort he has put into maintaining a job, taking care of his children, and independently seeking support for his mental health. These improvements justify a revocation sentence in the middle of the Guidelines range, rather than the above-Guidelines sentence requested by the government. Still, Defendant needs to extend the responsibility he has demonstrated in these areas of his life to drug abstention and compliance with the law.

The Court must consider the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. Here, this goal is met by sentencing Defendant to a within-Guidelines term of imprisonment for his revocation conduct.

In fashioning its recommended sentence, the Court must consider whether an additional term of supervised release is warranted. Here, an additional term of supervised release is not

warranted. Despite the opportunities and resources provided to Defendant, supervised release has proven ineffective at assisting Defendant to respect the law.

For the reasons discussed herein and during the final hearing, the Court finds that twelve months of incarceration with no additional supervised release is sufficient, but not greater than necessary, to address the incorporated sentencing factors.

V.

Based on Defendant's admitted conduct, and in consideration of the factors discussed above, the Court **RECOMMENDS:**

(1) Defendant be found guilty of the violations.

(2) Revocation and imprisonment for a term of twelve months.

(3) No further supervised release following the end of Defendant's term of imprisonment.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk.

Absent waiver, the matter will be placed on Judge Boom's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 11th day of June, 2025.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge